E-filing

1    **COMPLAINT BY A PRISONER UNDER THE CIVIL RIGHTS ACT, 42 U.S.C §§ 1983**

2    Name   EVANS              Phillip              T.
3            (Last)              (First)            (Initial)

4    Prisoner Number   JH3496

5    Institutional Address  P.O. Box 7500, Crescent City, CA 95532

6

7                   UNITED STATES DISTRICT COURT
                   NORTHERN DISTRICT OF CALIFORNIA
8
      Phillip T. EVANS                          )
9    (Enter the full name of plaintiff in this action.)   )      CV  08      1900
10                      vs.                      )    Case No. _____
                                                )    (To be provided by the Clerk of Court)
11   Robert A. Horel; James Tilton; R.L. Johnson;  )
                                                )    **COMPLAINT UNDER THE**
12   M.D. Castellaw; T.S. Buchanan; N. Heggstrom;  )    **CIVIL RIGHTS ACT,**
                                                )    **Title 42 U.S.C § 1983**
13   W.T. Harding; C.E. Wilber; C.E. Everts;     )
14   K.J. McCasland; R.C. Mazyck,                )
     (Enter the full name of the defendant(s) in this action)  )
15                                              )

16   *[All questions on this complaint form must be answered in order for your action to proceed..]*

17   I.      Exhaustion of Administrative Remedies.

18          [**Note:** You must exhaust your administrative remedies before your claim can go

19          forward.  The court will dismiss any unexhausted claims.]

20          A.      Place of present confinement  Pelican Bay State Prison (PBSP)

21          B.      Is there a grievance procedure in this institution?

22                  YES (✓)      NO ( )

23          C.      Did you present the facts in your complaint for review through the grievance

24                  procedure?

25                  YES (✓)      NO ( )

26          D.      If your answer is YES, list the appeal number and the date and result of the

27                  appeal at each level of review.  If you did not pursue a certain level of appeal,

28                  explain why.

COMPLAINT                        - 1 -

1. Informal appeal re: Claim (A) - excessive use of force. Appeal No.
D06-00731 filed on 03-26-06. Bypassed to 2nd level per
appeal procedures regarding staff complaints filed by inmates.

2. First formal level _____ Bypassed

3. Second formal level Date completed by reviewer; 06-28-06.
Partially granted in that investigation was conducted as
requested by Plaintiff. All other requested action denied.

4. Third formal level Plaintiff appealed second level decision on
09-06-06. Date completed by reviewer; 11-28-06. Appeal was
denied thus exhausting administrative remedies.

E.     Is the last level to which you appealed the highest level of appeal available to
you? re: claim "A", "B", "C", "E" and "F", yes. re: claim "D",

    YES (✓)    NO ( )   no, as explained below.

F.     If you did not present your claim for review through the grievance procedure,
explain why. re: Claim "D" - right to access the court — Plaintiff was unable
to exhaust, as described in detail below. re: claims "B", "C", "E" and
"F", Plaintiff exhausted administrative remedies. (Continued on page 5a)

II.    Parties.

A.     Write your name and your present address. Do the same for additional plaintiffs,
if any.

Phillip T. EVANS #J43496, D1-124, P.O. Box 7500
Crescent City, CA 95532. At all times mentioned herein,
Plaintiff was a prisoner at (PBSP)

B.     Write the full name of each defendant, his or her official position, and his or her
place of employment.

Defendant Robert A. Horel was at all times relevant herein

COMPLAINT       - 2 -

1  employed by the California Department of Corrections and Rehab-
2  ilitation (CDCR) as Warden at (PBSP). Plaintiff is informed and
3  believes, and thereon alleges, that defendant Horel is a properly
4  trained Warden who is and has been responsible for the safety,
   (continued on pg. 5)
5  III.    Statement of Claim.

6          State here as briefly as possible the facts of your case.  Be sure to describe how each

7  defendant is involved and to include dates, when possible.  Do not give any legal arguments or

8  cite any cases or statutes.  If you have more than one claim, each claim should be set forth in a

9  separate numbered paragraph.

10      (A) U.S. Constitutional 8th Amendment Violation
11          (Excessive and Unnecessary Use of Force)
12  (2) Plaintiff is serving a life sentence in the California Department
13  of Corrections and Rehabilitation (CDCR) and is currently serv-
14  ing his sentence in the Security Housing Unit at Pelican Bay
15  State Prison (PBSP-SHU), where he has been housed since
16  October, 1997. Conditions in (SHU) are very restrictive and
17  movement by unescorted, unrestrained inmates is limited to the
18  enclosed housing pod in which they live. Each housing pod
19  consists of (2) tiers with (4) cells on each tier, an exercise
20  yard, and (2) shower stalls with locking doors. All doors,
21  including cell doors, shower stall doors, exercise yard door, and
    (continued on pg. 8)
22
23  IV.    Relief.

24          Your complaint cannot go forward unless you request specific relief.  State briefly exactly

25  what you want the court to do for you.  Make no legal arguments; cite no cases or statutes.

26      First Claim For Relief
27  Violation of Prisoners 8th Amendment right to be free from
28  Unnecessary and Excessive Use of Force

COMPLAINT                           - 3 -

1  89) Plaintiff realleges and incorporates by reference each allegation
2  in paragraphs (1) through (88), and part I. Exhaustion of Admin-
3  istrative Remedies of this complaint, as if alleged herein.
4  (continued on page 37)

5  I declare under penalty of perjury that the foregoing is true and correct.

6

7  Signed this 20th day of March, 20 08

8  *Phillip Evans*

9

10  (Plaintiff's signature)

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

COMPLAINT                                    - 4 -

(continued from page 3. "Parties")
1  Security and over all well-being of all inmates at (PBSP).

2

3  2) Defendant M.D. Castellaw is and was at all times relevant herein employed
4  by the (CDCR) as Associate Warden at (PBSP). Plaintiff is informed and believes,
5  and thereon alleges, that defendant Castellaw is a properly trained Associate
6  Warden who is and has been responsible for the safety, security, and
7  over all well-being of all inmates at (PBSP).

8

9  3) Defendant R.L. Johnson is and was at all times relevant herein employed
10  by the (CDCR) as a Facility Captain at (PBSP). Plaintiff is informed and
11  believes, and thereon alleges, that defendant Johnson is a properly trained
12  Captain who is and has been responsible for the safety, security and over
13  all well-being of all inmates at (PBSP)

14

15  4) Defendant T.S. Buchanan is and was at all times relevant herein employed
16  by the (CDCR) as a correctional officer at (PBSP). Plaintiff is informed
17  and believes, and thereon alleges, that defendant Buchanan is a properly
18  trained correctional officer who is and has been responsible for the
19  safety, security, and over all well-being of all inmates at (PBSP).

20

21  5) Defendant N. Heggstrom is and was at all times relevant herein
22  employed by the (CDCR) as a correctional sergeant at (PBSP), Plaintiff
23  is informed and believes, and thereon alleges, that defendant Heggstrom
24  is a properly trained correctional sergeant who is and has been
25  responsible for the safety, security, and over all well-being of all
26  inmates at (PBSP)

27

28  6) Defendant W.T. Harding is and was at all times relevant herein

1  employed by the (CDCR) as a Correctional Sergeant at (PBSP). Plaintiff is

2  informed and believes, and thereon alleges, that defendant Harding is a

3  properly trained Correctional Sergeant who is and has been responsible for

4  the safety, security, and over all well-being of all inmates at (PBSP).

5

6  7) Defendant C.E. Everts is and was at all times relevant herein employed

7  by the (CDCR) as a Correctional officer at (PBSP). Plaintiff is

8  informed and believes, and thereon alleges, that defendant Everts is a

9  properly trained Correctional officer who is and has been responsible for

10  the safety, security, and over all well-being of all inmates at (PBSP).

11

12  8) Defendant K.J. McCasland is and was at all times relevant herein

13  employed by the (CDCR) as a Correctional officer at (PBSP). Plaintiff

14  is informed and believes, and thereon alleges, that defendant McCasland

15  is a properly trained Correctional officer who is and has been responsible

16  for the safety, security, and over all well-being of all inmates at (PBSP).

17

18  9) Defendant R.C. Mazyck is and was at all times relevant herein

19  employed by the (CDCR) as a Correctional officer at (PBSP). Plaintiff is

20  informed and believes, and thereon alleges, that defendant Mazyck

21  is a properly trained Correctional officer who is and has been responsible

22  for the safety, security, and over all well-being of all inmates at (PBSP)

23

24  10) Defendant C.E. Wilber is and was at all times relevant herein employed

25  by the (CDCR) as the Appeals Coordinator at (PBSP). Plaintiff is

26  informed and believes, and thereon alleges, that defendant Wilber is

27  a properly trained Appeals Coordinator who is and has been responsible

28  for the processing, screening and assignment of all non-medical

1  administrative inmate appeals at (PBSP).

2

3  11) Defendant James Tilton is and was at all times relevant herein
4  employed by the (CDCR) as Secretary of Corrections of the state
5  of California. As the Secretary, defendant Tilton is and has been
6  responsible for the promulgating, supervising the promulgation of,
7  implementing, supervising the implementation of, monitoring
8  compliance with, supervising the monitoring of compliance with,
9  enforcing and/or supervising the enforcement of policies,
10 procedures, and regulations affecting all inmates within the
11 (CDCR).

12

13 12) At all times mentioned in this complaint, each individual de-
14 fendant was acting under color of state law in the course and
15 scope of their employment, and are sued herein in their official
16 and individual capacities.

17
18
19
20
21
22
23
24
25
26
27
28

(Continued From page 3, "Statement of Claim")

1  the door at the Front of the housing pod which gives access into the

2  housing pod itself, are opened and closed mechanically by the "control

3  booth" officer who sits in an enclosed, elevated tower within the

4  housing unit, so inmates are able to be released From their cells

5  without being restrained in handcuffs and escorted by correctional

6  officers. Examples of when inmates are released unescorted

7  and unrestrained From their cells are when they are released for

8  showers, for their daily hour and a half exercise time on the

9  yard which is adjacent to the housing pod, and when an inmate

10  has a scheduled medical appointment or visit, etc... When an

11  inmate has to be escorted to a medical appointment, visit or other

12  activity that takes place outside the enclosed housing pod, the

13  control boother officer will open the inmates cell door and the

14  inmate will report to the door at the Front of the housing pod

15  where he is strip-searched and restrained in handcuffs with

16  his hands behind his back, The handcuffs are applied through

17  a small "handcuff port" in the center of the door, and only after

18  the inmate is restrained in handcuffs is the Front door of the

19  housing pod opened and the inmate escorted wherever it is that he

20  needs to be

21

22  13) On 03-17-06, Plaintiff Evans was released From his cell for

23  his shower. Plaintiff exited his cell and entered the shower stall,

24  which is approximately (25) Feet From his cell, whereupon the control

25  booth officer mechanically closed the shower stall door thus locking

26  Plaintiff in the shower stall for his (15) minute shower per (PBSP-SHU)

27  procedures. At that time, Plaintiff commenced his shower.

28

14) Approximately (4) to (5) minutes later, the door at the front of the housing pod was opened whereupon defendants Heggstrom, Harding, Buchanan, Everts, McCasland and Mazyck entered the housing pod, quickly approached the shower stall in which Plaintiff was locked, at which time defendant Harding ordered Plaintiff to turn around, put his hands behind his back and put them through the handcuff port in the center of the shower stall door so they could place handcuffs on his wrists. Defendant Harding informed Plaintiff that they wanted to search Plaintiff and the shower stall, and ordered him to immediately follow staff orders.

15) Inmates in (SHU) are required to shave in the shower stall during their shower time, and as Plaintiff was in the middle of shaving his head and still had soap on his body, he requested to be given a few minutes to at least rinse off before submitting to the hand-cuffs. Defendant Harding denied his request and ordered an unidentified staff member who was out of Plaintiffs line of sight to shut off the main water valve to the showers so that Plaintiff could not rinse the soap off of his body. Plaintiff did not think his request to rinse off before submitting to the handcuffs was unreasonable and verbally protested the decision to shut off the water, but at no time did Plaintiff threaten or provoke the defendants in any way or give them cause to think he was going to resist or assault staff. Plaintiff then complied with defendant Hardings orders and placed his hands through the port and was handcuffed with his hands behind his back, whereupon the shower door was opened by the control booth officer.

16) Once the door was opened, and as Plaintiff began to back out of the shower stall per staff orders, defendant McCasland roughly grabbed Plaintiff by the right arm and forcefully yanked him out of the shower stall and forcefully slammed him against the wall to the side of the shower area. As Plaintiff began to verbally protest the rough treatment, but was doing nothing else to provoke or resist staff in any way, he heard defendant Heggstrom say "take him down" whereupon Plaintiffs feet were kicked out from under him by the defendants, and he was slammed into the ground face first, which resulted in bruising and bleeding to the right side of his face. (Plaintiff again reiterates that his hands were handcuffed behind his back during this entire time and had not resisted in any way)

17) Once Plaintiff landed on the ground, and without any provocation, defendants Heggstrom, Harding, Buchanan, Everts, McCasland and Mazyck jumped on Plaintiff in a "dog-pile" type fashion. Defendant Buchanan then grabbed Plaintiffs nose and began to push inward and upward with the palm of his hand which caused excruciating pain to Plaintiffs face. Plaintiff is informed and believes, and thereon alleges, that defendant Buchanan in so doing used an immobilizing pressure point that was meant to cause great pain to the Plaintiff.

18) At no time did Plaintiff resist until after he was slammed into the ground and assaulted by the defendants in the manner described herein above, and even then his only resistance was in response to defendants unprovoked assault and reaction to the severe pain they were inflicting on him. This "resistance" consisted of trying to move his face away from defendant Buchanans hand pushing into

1  his nose. Notably, none of the defendants sustained or reported
2  any injuries.
3
4  19) Leg shackles were then placed on Plaintiffs ankles at which time
5  he was yanked from the floor in a forceful manner and then carried to
6  (SHU) medical clinic
7
8  20) Plaintiff refused medical treatment because he was very upset due
9  to the assault that defendants Heggstrom, Harding, Buchanan, Everts,
10  McCasland and Mazyck had just committed against him with no
11  provocation or justification, and as the MTAs at (PBSP) are also
12  peace officers and therefore, co-workers to the defendants that had
13  just assaulted him, he did not feel like cooperating at that time and
14  did not allow the MTA to examine him. But visible injuries were
15  noted by MTA Baker on the "Medical Report of Injury or Unusual
16  Occurrence," which included abrasions and scratches to the face
17  and back as well as reddened areas to those same areas. Bleeding
18  to Plaintiffs face was also noted in the subsequent Rules Violation
19  Report (RVR) that was issued to Plaintiff due to this incident.
20
21  21) while Plaintiff was still at the (SHU) medical clinic he informed
22  defendants Buchanan and Heggstrom that he intended to file a staff
23  misconduct complaint through the existing appeal procedures at (PBSP)
24  and that upon exhaustion of the administrative remedies he intended
25  to file a federal civil rights action for constitutional violations.
26
27  22) On 03-26-06 Plaintiff filed the staff complaint and alleged
28  therein that defendants Heggstrom, Harding, Buchanan, Everts, McCasland

1  and Mazyck exercised unnecessary and excessive use of force
2  against him on 03-17-06 when at no time at that day was use of
3  force justified, and asked that the incident be investigated, that the
4  defendants be reprimanded for their conduct and retrained in use
5  of force procedures, and that Plaintiff be compensated for civil rights
6  violations.
7
8  23) On 03-29-06, Plaintiff was issued a fabricated (RVR) which Plaintiff
9  alleges, based on information and belief, was in response to his staff
10 complaint that he filed on 03-26-06, and was charged therein with
11 attempted battery on a peace officer relative to the incident that
12 occurred on 03-17-06. Specifically, it was alleged that Plaintiff
13 attempted to kick defendant Heggstrom. All defendants involved in
14 that incident filed individual staff reports that were part of the
15 (RVR), and all falsely alleged that Plaintiff attempted to kick defendant
16 Heggstrom. However, Plaintiff could not have attempted to kick any
17 officer at that time even if he wanted to as he had just been
18 slammed chest first into the wall and was being held there by
19 several officers. In addition, all the defendants were behind
20 the Plaintiff at that time which prevented him from being
21 able to see where they were at.
22
23 24) As stated herein above, Plaintiff was completely restrained when
24 excessive and unnecessary force was used against him by the
25 defendants on 03-17-06. His hands were cuffed behind his back,
26 additionally, his back was to the defendants and he was facing the
27 wall subsequent to defendant McCasland slamming him against the
28 wall when defendant Heggstrom gave the order to "take him down",

1   and Plaintiff reiterates that he only resisted once he was on the
2   ground in response to the weight of the defendants crushing his
3   handcuffed body and the excruciating pain being intentionally inflicted
4   on his face and nose areas by defendant Buchanan.

5

6   25) In the (RVR), defendant Heggstrom states that he was told by "staff" that
7   prior to Plaintiffs entering the housing pod shower, he "handed something"
8   to the inmates in the cell adjacent to the shower, which was the reason
9   defendant Heggstrom claims that he, and defendants Harding, Buchanan,
10  Everts, Mazyck and McCasland reported to the housing pod to search
11  the Plaintiff, the shower stall, and Plaintiffs cell, for contraband. At
12  no time did Plaintiff "hand something" to any inmate in his housing
13  pod on his way to the shower stall that day, however, even if he had,
14  this is a common occurrence and inmates hand items such as
15  magazines, newspapers, books, etc..., to other inmates every day
16  when released from their cells, including the Plaintiff, and not
17  once in the over (10) years that Plaintiff has been incarcerated at
18  (PBSP-SHU) has he ever seen staff respond to a housing pod to
19  search an inmate, his cell, or the area in which he occupied  as
20  a result of the inmate "handing something" to another inmate.
21  Plaintiff himself hands items to other inmates, and vice versa,
22  every day and has never once been disciplined or searched for
23  doing so.

24

25  26) No contraband was found on Plaintiff, in the shower stall, or in his
26  cell when the defendants conducted the searches that day. Defendants
27  also searched the cell of the inmates that defendant Heggstrom claims
28  that Plaintiff "handed something" to, however no contraband was

1  found on those inmates or in their cell.

2

3  27) Plaintiff is informed and believes, and thereon alleges, that unnecessary
4  and excessive force was used against him because he verbally protested
5  the shutting off of the water to the shower, and the rough treatment
6  in grabbing him and yanking him out of the shower and forcefully
7  slamming him against the wall.

8

9  28) Relative to this claim, Plaintiff lastly points out that he is only
10 (5) feet (7) inches tall and weighs less than (180) pounds, whereas
11 he alleges, based on information and belief, that several of the
12 defendants were over (6) feet or more and weighed over (220)
13 pounds, and that all the defendants were much bigger in weight
14 and height than himself.

15

16          (B) U.S. Constitutional 1st and 14th Amendment Violations
17            (Retaliation and Due-Process Violations)

18

19 29) As described herein above, immediately after unnecessary and
20 excessive force was used against the Plaintiff by defendants Heggstrom,
21 Harding, Buchanan, Everts, McCasland and Muzyck on 03-17-06,
22 Plaintiff informed defendants Heggstrom and Buchanan that he intended
23 to file a staff misconduct complaint through existing departmental appeal
24 procedures for their unjustified, unnecessary and excessive use of force
25 and that upon exhaustion of his administrative remedies available at
26 (PBSP) he intended to pursue a 42 U.S.C. 1983 civil rights action
27 for constitutional violations.

28

1  30) On 03-26-06 Plaintiff filed the staff complaint and complained that
2  defendants Heggstrom, Harding, Buchanan, Everts, McCasland, and Mazyck
3  exercised unnecessary and excessive use of force against him on 03-17-06.
4  He asked that the defendants be reprimanded and retrained in use of
5  force procedures and that Plaintiff be compensated for civil rights
6  violations.
7
8  31) On 03-29-06, (3) days after Plaintiff filed the staff complaint, and
9  (12) days after Plaintiff informed defendants Heggstrom and Buchanan
10 that he planned to do so, he was issued a fabricated (RVR) as described
11 herein above whereby Plaintiff was charged with attempted battery on
12 a Peace officer, which was alleged to have taken place during the
13 excessive and unnecessary use of force incident that took place on
14 03-17-06. In the (RVR), defendants claim force was used after
15 Plaintiff attempted to batter defendant Heggstrom.
16
17 32) Plaintiff alleges, based on information and belief, that he was issued
18 an (RVR) and charged with attempted battery on a Peace officer in
19 order for the defendants to justify the unnecessary and excessive
20 force that was used against him because he informed them that he
21 was going to file a complaint for civil rights violations and make them
22 answer for their misconduct. Plaintiff followed through on this staff
23 complaint, and alleges, based on information and belief, that the
24 defendants response was to retaliate by fabricating the false (RVR).
25
26        (c) U.S. Constitutional 1st and 14th Amendment Violations
27           (Retaliation and Due-Process Violations)
28

33) On 03-14-07, defendant Buchanan approached Plaintiffs cell, informed him he wanted to search Plaintiff and his cell, and ordered him to place his hands through the handcuff port in the center of the cell door so that he could place Plaintiff in handcuffs. Once Plaintiff was handcuffed, his cell door was opened and defendant Buchanan and one other correctional officer escorted Plaintiff to a holding cell outside of Plaintiffs housing unit. Plaintiff alleges, based on information and belief, that defendant Buchanan then returned to Plaintiffs cell and searched it.

34) Approximately (2) hours later, defendant Buchanan and one other correctional officer returned to the holding cell in which Plaintiff was being held and returned him back to his cell. Plaintiff immediately noticed that his cell was trashed and his property was thrown all over his cell, and that his brand new set of personal headphones had been confiscated during the search. Upon asking the correctional officer who had escorted Plaintiff back to his cell with defendant Buchanan why his property had been treated with such disrespect and why his headphones had been removed from his cell, defendant Buchanan, who was still standing in front of Plaintiffs cell, spoke up and informed Plaintiff that he was the one who searched his cell and took his headphones. He then stated, "If you don't like it, file another staff complaint on me", alluding in a sarcastic tone to the staff complaint Plaintiff filed on 03-26-06 in which Buchanan was named a party. Plaintiff stated he would do just that if he did not get his headphones back, as there was no reason for them to have been confiscated, to which defendant Buchanan replied, "Go ahead and see what happens."

35) Plaintiff alleges, based on information and belief, that defendant

1   Buchanan confiscated his brand new set of personal headphones and
2   intentionally left his cell in complete disarray and threw his property all
3   over his cell as retaliation for the staff misconduct complaint he filed
4   on 03-26-06. This is based partly on the (2) statements that defendant
5   Buchanan directed at Plaintiff as described herein above, as well as
6   the fact that he does not work in the area of the prison that Plaintiff
7   is housed in, and 03-14-07 was the first time Plaintiff saw or
8   had any interaction with defendant Buchanan since he filed the
9   staff complaint, which was his first opportunity to personally retaliate
10  against Plaintiff. This explains the period of time between the date
11  the complaint was filed and the date of the subsequent
12  retaliatory conduct.

13

14  36) Additionally, Plaintiff is informed and believes, and thereon alleges,
15  that defendant Buchanan, by stating, "Go ahead and see what happens"
16  was in effect telling Plaintiff that he would be retaliated against for
17  exercising his right to petition government for redress of grievance.

18

19  37) On 03-14-07, Plaintiff was placed on "security restrictions" not
20  ordinarily experienced by similarly situated inmates in (PBSP-SHU). The
21  security restrictions included (1) having a "barstrap" placed on his
22  cell door; (2) being placed on "escort status"; and (3) being placed
23  on mandatory "weekly cell search status", as described in detail below.
24  Plaintiff was not informed at that time why he was being placed on
25  these security restrictions.

26

27  38) The barstrap security restriction consists of a metal bar that is slid
28  into a slot on Plaintiffs cell door and then is locked into place with a

--17--

padlock so that the door can not be opened mechanically by the control booth officer without another officer first unlocking the padlock and removing the bar, otherwise known as a "barstrap". Anytime Plaintiff was locked in his cell mechanically, the barstrap was also locked on Plaintiffs door with the padlock. The barstrap remained on Plaintiffs cell door from 03-14-07 to 11-19-07, at which time it was removed without explanation. No other inmates in Plaintiffs housing unit had a barstrap on their cell door, nor does Plaintiff know of any other inmate at (PBSP-SHU) who has had a barstrap placed on their cell door for more than (10) days as a security restriction. Plaintiff personally knows numerous inmates who were accused of murder while housed at (PBSP-SHU) and/or assaulting staff who were not placed on the barstrap security restriction, and the ones that were placed on that security restriction were removed from it after (10) days.

39) The escort status security restriction consists of Plaintiff being re-stricted from leaving his cell without first being handcuffed through the port in Plaintiffs cell door, and is then escorted in restraints by (2) correctional officers whenever he leaves his cell, unlike any other inmate in Plaintiffs housing unit, and he knows of no other inmates at (PBSP-SHU) who have had the escort status security restriction applied for such a long period of time. He continues to be on this security restriction, and defendants Johnson and Castellaw both stated that Plaintiff was going to remain on it "permanently" and "indefinitely", something that Plaintiff alleges, based on infor-mation and belief, has never before been done at (PBSP-SHU). The usual period of time that an inmate stays on "escort-status" is (10) days.

— 18 —

40) The mandatory weekly cell search security restriction consists of a mandatory search of Plaintiffs cell at least once a week but was often searched (2) to (4) times a week. This security restriction lasted from 03-14-07 to 10-01-07. Plaintiff is unaware of any other inmate who has had a security restriction applied to them that required a mandatory weekly search of their cell.

41) According to operational procedure (O.P.) 222, Security Housing Unit (SHU) VI; Methods D, regarding security restrictions and precautions, they may be initiated on an inmate temporarily for the safety and security of the institution and will be related to the emergency situation presented by the inmate. O.P. 222 also states that the inmates behaviour will be documented as an (RVR) and that the restriction will be documented on a California Department of Corrections (CDC) 128B General Chrono outlining the reason for the restriction.

42) Once the security restrictions are implemented, there is a maximum time period that may be imposed, at the end of which they may be extended with justification for an additional period. This justification must be approved at the Associate Warden level.

43) In Plaintiffs present case, after the initial implementation of the security restrictions, a review was conducted by defendant Johnson after which he chose to extend Plaintiffs security restrictions for an additional (30) days. He continued to extend the security restrictions every (30) days and his decision to do so was approved by defendant Castellaw, Associate Warden, each time. Upon each (30) day extension,

1  Plaintiff was issued a CDC-128 B General Chrono outlining the reason
2  for the extension, however, each chrono Plaintiff received was a copy
3  of the last chrono issued with the only change being the dates of
4  review and expiration of the security restrictions.

5

6  44) The barstrap and weekly cell search security restrictions as de-
7  scribed herein above created an atypical and significant hardship be-
8  cause they severely restricted Plaintiffs movements and subjected him
9  alone to conditions much different from those ordinarily experienced by
10 similarly situated inmates in an already restrictive (SHU) environment
11 at (PBSP-SHU).

12

13 45) The escort status security restriction as described herein above
14 continues to create an atypical and significant hardship because it
15 severely restricts Plaintiffs movements and subjects him alone to
16 conditions much different from those ordinarily experienced by similarly
17 situated inmates in an already restrictive (SHU) environment at (PBSP-SHU).

18

19 46) On 03-24-07 Plaintiff was issued a fabricated (RVR) and was charged
20 therein with Threats of Force or Violence Against a Public Official wherein
21 defendant Buchanan alleged that Plaintiff made threats against him on
22 03-14-07. Defendant Buchanan alleged that Plaintiff made these threats
23 when he was standing in front of Plaintiffs cell after the cell search and
24 confiscation of the headphones as described herein above. At no time
25 did Plaintiff threaten defendant Buchanan with force or violence
26 though he did inform him that if he did not return his headphones he
27 would file a staff complaint. The only threat that was made was the
28 veiled one that defendant Buchanan directed at Plaintiff when

1  Plaintiff stated he would file another staff complaint against defendant
2  Buchanan if he did not return his headphones. Specifically, defendant
3  Buchanan replied, "Go ahead and see what happens".

4

5  47) Plaintiff is informed and believes, and therein alleges, that defendant
6  Buchanan filed the fabricated (RVR) as further retaliation for the staff
7  complaint that Plaintiff filed against him on 03-26-06 and for Plaintiff's
8  stated intention to file a staff complaint for the unjustified confiscation
9  of his headphones. The (RVR) wherein defendant Buchanan alleged that
10  Plaintiff threatened him with force or violence was dismissed on 04-15-07
11  by Senior Hearing Officer Lieutenant Vanderhoofven for lack of evidence
12  and "in the interest of justice". A counseling chrono was issued in it's
13  place wherein Plaintiff was counseled for disrespecting a correctional
14  officer not a party in this complaint, which Plaintiff admitted to doing.

15

16  48) On 06-01-07, Plaintiff was issued a CDC 128 B General Chrono signed
17  by defendant Johnson whereby Plaintiff was informed that the security
18  restrictions were going to remain in place due to the threats that
19  Plaintiff made against defendant Buchanan on 03-14-07, and the
20  (RVR) that was issued as a result on 03-24-07, as well as another
21  (RVR) that was issued on that same day and which was also dis-
22  missed by Senior Hearing Officer Lieutenant Vanderhoofven on
23  04-15-07. The CDC 128 B General Chrono was approved by defendant
24  Castellaw, even though the Plaintiff was found not guilty of those
25  charges.

26

27  49) From 03-14-07 to the present, defendants Johnson and Castellaw have
28  continued to extend the escort status security restriction every (30) days

1  and did so even after the (RVRs) that were issued on 03-24-07 were

2  dismissed, however, they continue to use those same (RVRs) as justification

3  to continue imposing the escort-status security restriction.

4

5  50) From 03-14-07 to 10-01-07, defendants Johnson and Castellaw

6  continued to extend the mandatory weekly cell search security restriction

7  every (30) days and did so even after the (RVRs) that were issued

8  on 03-24-07 were dismissed, however, they continued to use those

9  same (RVRs) as justification to continue imposing the mandatory weekly

10 cell search security restriction.

11

12 51) From 03-14-07 to 11-19-07, defendants Johnson and Castellaw con-

13 tinued to extend the bar-strap security restriction every (30) days and

14 did so even after the (RVRs) that were issued on 03-24-07 were

15 dismissed, however, they continued to use those same (RVRs) as

16 justification to continue imposing the bar-strap security restriction.

17

18 52) Plaintiff is informed and believes, and thereon alleges, that defendants

19 Johnson and Castellaw are not conducting a meaning review before

20 extending plaintiff's escort status security restriction each month

21 but are simply rubber stamping and recycling the same CDC 128 B

22 General Chrono each month.

23

24 53) Plaintiff is informed and believes, and thereon alleges, that defendants

25 Johnson and Castellaw were not conducting meaningful reviews before

26 extending plaintiff's barstrap and mandatory weekly cell search security

27 restrictions each month but were simply rubber stamping and recycling

28 the same CDC 128 B General Chrono each month.

54) Plaintiff is informed and believes, and thereon alleges, that defendants Johnson and Castellaw have conspired with defendant Buchanan and are assisting him in his retaliatory acts by continuing to extend Plaintiffs Security restrictions absent supporting charges and (RVR) as required by (PBSP) Operational Procedures, and in so doing have violated Plaintiffs 1st Amendment right to be free from retaliation for petitioning government for redress of grievance. Additionally, the inadequacy of meaningful reviews of Plaintiffs security restrictions, and the impropriety of defendants Johnsons and Castellaws conduct in denying Plaintiff meaningful review before extending his restrictions, and citing charges for which Plaintiff was found not guilty, violates Plaintiffs 14th Amendment right to procedural and substantive due-process.

### (D) U.S. Constitutional 1st and 14th Amendment Violations
( Denial of prisoners right to access the court with broader
right to petition government for redress of grievance,
and denial of Due-Process.

55) Plaintiff has challenged the security restrictions as described herein above through existing appeal procedures at (PBSP) each time the (PBSP) Administration conducted a review that led to a decision to extend Plaintiffs security restrictions. Plaintiffs right to appeal is grounded in the California Code of Regulations 3084.1(a), which states, "Any inmate or parolee under the departments jurisdiction may appeal any departmental decision, action, condition, or policy which they can demonstrate as having an adverse effect upon their welfare. The decisions of the Departmental Review Board which serve as the directors level decision, are not appealable and conclude the inmates or parolees departmental administrative remedy pursuant to section 3376.1"

56) Each time Plaintiffs security restrictions were extended, the extension was for (30) days, at which time the administration conducted a review. and decided to extend the length of the security restrictions for an additional (30) days. Plaintiff appealed the first two (30) day extensions but when he attempted to appeal the following (30) day extension and each (30) day extension thereafter, (PBSP) Appeals Coordinator defendant Wilber refused to process the appeals in accordance with California Code of Regulations 3084.1.(a). His reason for refusing to process one such appeal that Plaintiff filed on 08-23-07, as stated on the "Inmate/Pardee Appeals Screening Form", which was attached to the appeal he rejected and returned to Plaintiff on 09-05-07, was that the issue of Plaintiffs "housing restrictions/precautions were addressed in (2) prior appeals and that periodic review of the security precautions does not necessarily open up a new appeal issue."

57) Utilizing the existing departmental appeal procedures at (PBSP), Plaintiff then filed a staff complaint on 09-06-07 challenging defendant Wilbers refusal to process his appeal of 08-23-07 regarding the extension of the security restrictions. In the staff complaint, Plaintiff challenged defendant Wilbers screening decision and refusal to process the appeal, and pointed out that upon the expiration of the security restrictions each month, a review was conducted and a decision to extend the security restrictions is by definition a "departmental decision, action, and condition" which gives Plaintiff the right to appeal per California Code of Regulations 3084.1.(a). As to the "adverse effect" requirement in section 3084.1.(a), Plaintiff asserted that he was adversely effected because the security restrictions created an atypical and significant hardship as

— 24 —

1   they subjected him alone to conditions much different from those ordinarily
2   experienced by any inmates in plaintiffs housing unit and/or by more
3   than 99.9% of inmates serving their sentences in (PBSP-SHU), which he
4   asserted was a constitutional violation under the due-process clause
5   under the 14th Amendment. Additionally, he asserted that the security
6   restrictions were put in place as an act of retaliation which violated his
7   1st Amendment right to be free from retaliation for filing a staff
8   misconduct complaint, which is also an adverse effect to plaintiffs
9   welfare. The administrative remedy that plaintiff sought was that the
10  appeal he filed on 08-23-07 be processed by defendant wilber in
11  accordance with California Code of Regulations 3084.1.(a). In addi-
12  tion, plaintiff asked that Internal Affairs investigate defendant wilbers
13  continual pattern of abuse of his authority as (PBSP) Appeals Coord-
14  inator, and his violations of 3084.1. (a) and that plaintiff be
15  compensated for 1st and 14th Amendment violations.

16

17  58) On 09-07-07, the staff complaint was returned to plaintiff with an
18  attached screening form in which defendant wilber states, "your extensions
19  were adequately addressed in (2) prior appeals and rejection of the third
20  appeal was appropriate and within policy. In addition, this screening
21  decision was within the scope of the AC's duties and shall not be
22  categorized as a staff complaint." At the bottom of the attached
23  screening form, it states if the inmate does not agree with the
24  screening decision, it is to be returned to the Appeals Coordinator
25  with an explanation of why the inmate believes it to be in error,
26  with all supporting documents.

27

28  59) On 09-11-07, plaintiff complied by returning the staff complaint and

1   supporting documents (i.e., the appeal Plaintiff filed on 08-23-07 that
2   defendant Wilber refused to process) with a written explanation of why
3   he felt defendant Wilber's screening decision not to process the staff
4   complaint was in error. Plaintiff again pointed out that defendant Wilber was
5   required to process his staff complaint per California Code of Regulations
6   Section 3084.1 (a) and in addition he was required to process it in
7   accordance with D.O.M 3140.9 through 3140.16 as well as CDC
8   Administrative Bulletin 98/10 issued on August 21, 1998, which states
9   unequivocally "that all complaints which allege any misconduct by a
10  staff member shall be logged by the Appeals Coordinator as a staff
11  complaint."

12

13  60) On 09-13-07, the staff complaint, all supporting documents and the
14  Plaintiff's written explanation why he disagreed with defendant Wilber's
15  screening decision was returned to Plaintiff with a handwritten note
16  from defendant Wilber that stated, "Reviewed. Screening decision
17  stands. C. Wilber, A.C."

18

19  61) On or about 09-13-07, Plaintiff mailed the appeal he filed on 08-23-07
20  that defendant Wilber refused to process regarding the extension of his
21  security restrictions, the staff complaint he filed on 09-06-07
22  which defendant Wilber also refused to process, and all supporting
23  documents with a letter to the Chief, Inmate Appeals Branch in Sacramento
24  asking that he intervene and order defendant Wilber to perform his
25  duties as appeals coordinator and comply with section 3084.1 (a)
26  of the California Code of Regulations, D.O.M. 3140.9 through 3140.16
27  and CDC Administrative Bulletin 98/10. N. Grannis, Chief, Inmate
28  Appeals returned the appeal to defendant Wilber with a note that

1  stated Plaintiff had a right to appeal any review that led to an extension

2  of the security restrictions, after which the appeal was processed in

3  accordance with appeal procedures. However, on 11-06-07 Chief, Inmate

4  Appeals Grannis returned the staff complaint to the Plaintiff with a

5  note written on it stating that the staff complaint was rejected at the

6  institution. Included was a format type letter signed by Grannis which

7  stated that he was screening out the staff complaint because it

8  did not comply with appeal procedures established in the California

9  Code of Regulations and was being returned to the Plaintiff because

10  it "must be completed through the second level of Review on behalf

11  of the Warden" (before the Chief, Inmate Appeals, accepts it

12  for processing at the 3rd and Final level, known as the Directors

13  level). The Plaintiff has tried to File the staff complaint at the

14  institution in order to comply with appeal procedures but defendant

15  Wilber has refused to accept and process it.

16

17  62) Although Chief, Inmate Appeals Grannis did not take action regarding the

18  staff complaint, he did disagree with defendant Wilber's screening

19  decision regarding the original appeal challenging the security restrictions,

20  therefore the screening decision regarding the appeal of the security

21  restrictions was not within the scope of the Appeal Coordinator (i.e.

22  defendant Wilber's) duties as defendant Wilber contended, so the

23  staff complaint that Plaintiff Filed against defendant Wilber regarding

24  his screening decision and refusal to process the appeal should have

25  been processed in accordance with California Code of Regulations section

26  3084.1.(a), D.O.M. 3140.9 through 3140.16, CDC Administrative

27  Bulletin 98/10, Plaintiffs 1st Amendment right to access the courts

28  with broader right to petition government for redress of grievance, and

1  his 14th Amendment right to due-process.

2

3    (E) U.S. Constitutional 1st Amendment right to Freedom of
4       expression and 14th Amendment right to equal protection Violations
5    California Code of Regulations Title 15 § 3024(a) is Vague,
6    overbroad and applied arbitrarily.

7

8  63) The California Department of Corrections and Rehabilitation (CDCR) has
9  a rule in the California Code of Regulations (CCR) Title 15 section 3024(a)
10  which states, "Inmates shall not actively engage in a business or profession
11  except as authorized by the institutional head or as provided in section
12  3104 (regarding Hobby Craft Program). For the purpose of this section,
13  a business is defined as any revenue generating or profit making activity."

14

15  64) Plaintiff is challenging (CCR) Title 15 section 3024(a) on the grounds
16  that it is vague, overbroad, and applied arbitrarily and thus has vio-
17  lated his 1st Amendment right of Freedom of expression as well as
18  his 14th Amendment right of equal protection, as described in detail
19  below.

20

21  65) Plaintiff is serving a life sentence and also has a large court
22  imposed restitution fine. He has no incoming revenue of his own and
23  any funds he receives are donations from family and friends, which are
24  subject to the automatic 50% reduction as restitution payment
25  as well as the 5% reduction for the administrative fee that (CDCR)
26  charges for the collection and processing of the court ordered rest-
27  itution. The monetary donations that Plaintiff receives are few and far
28  between and the 55% reduction of donations is a further hardship and

1  strain on his family and friends.

2

3  66) Plaintiff has been housed in (PBSP-SHU) since October, 1997. Conditions
4  in (SHU) are very restrictive, with constructive type programming limited
5  to approved cell-study correspondence courses (in 2004-2005 PBSP Ed-
6  ucation Department began to offer some college correspondence courses),
7  these courses all cost money for books, postage, tests, etc..., which
8  Plaintiff can not afford. (PBSP-SHU) provides inmates with an opportunity
9  for a monthly canteen draw in which they may purchase various items
10 not provided to inmates by (CDCR) like cosmetics, shower shoes,
11 vitamins, etc..., extra food items to supplement the meager portions
12 and poor quality of food provided to inmates in (SHU) per the required
13 (3) daily meals, as well as stationary items that are provided to inmates
14 by (CDCR) but at taxpayers expense. Plaintiff is rarely able to make
15 canteen purchases.

16

17 67) In (SHU), Plaintiff wanted to spend his time constructively but could
18 not afford the correspondence courses so he taught himself to draw,
19 which was difficult to do in (SHU) because drawing is frowned upon by
20 most staff, and the (PBSP-SHU) administration takes great pains to
21 suppress (SHU) inmates from expressing themselves artistically and
22 sharing their art with the world.

23

24 68) The administration at (PBSP) has banned all forms and types of
25 art paper from entering (SHU) so inmates there wishing to express
26 themselves through their art are forced to do so on regular writing
27 paper with a weight of no more than .02 ounces and no thicker
28 than "one sheet of regular legal writing paper." (SHU) inmates are

1  also only provided with and allowed to have in their possession are ball-
2  point pen "filler," which makes it extremely difficult to draw (no
3  pencils, charcoal, water-colors, etc..., are allowed into SHU.)

4

5  69) When (SHU) inmates send artwork to family and friends on the outside,
6  the administration at (PBSP) many times will stop the artwork from
7  going out and will manipulate prison regulations and/or fabricate other
8  reasons to confiscate it as "contraband."

9

10  70) One such example of a misconstrued or manipulation of a prison reg-
11  ulation to suppress artistic expression happened when the (PBSP) admin-
12  istration stopped one of plaintiff's outgoing letters because he offered
13  to draw something for a correspondent-friend on the outside. The
14  administration asserted that he could not offer a drawing to an outside
15  correspondent because it violated (CCR) Title 15 section 3010, which
16  states, "Inmates may not ask for or accept any gift of money, property,
17  material or substance from institution visitors, employees or other persons
18  and may not give any person a gift or promise of one ..." However, this
19  regulation was not meant to stop inmates from offering or sending, or
20  asking for or receiving gifts from their correspondents; if it was,
21  inmates would not be permitted to receive monetary donations, books,
22  stationary, annual packages with food, shoes, hygiene items, etc...,
23  from their family and friends on the outside. This regulation was clearly
24  meant to prevent staff and visitors to the prison from introducing
25  contraband to the inmate population, to prevent or discourage
26  inappropriate relationships between inmates and staff or persons
27  who are visiting or touring the prison in some official or professional
28  capacity, and to prevent or discourage one inmate from extorting

another. But in this case, it was used to discourage Plaintiff from mailing a drawing, or offering to do so, to an outside correspondent, in effect suppressing his artistic expression.

71) One other such example of how the (PBSP) administration suppresses Plaintiffs artistic expression pertains to the rubber stamp that staff place on the back of all of his artwork before it is mailed out with the words "Pelican Bay State Prison, Security Housing Unit, Unit D-1." The stamp is about (3) and a half inches long by (1) and a half inch wide, red ink is used, and due to the limitation regarding the thickness of paper allowed into (SHU) as described hereinabove, the stamp generally bleeds through the paper and can be seen through the artwork, thus ruining. This discourages Plaintiff from wanting to mail out art to his family and friends as he knows that some of his drawings will inevitably be ruined. (This will be further detailed in the next claim of this complaint.)

72) Nonetheless, Plaintiff would share his art with family and friends who were impressed with his newly learned skills and this evolved into the idea of wanting to share his artistic expression with the world with the intent to possibly provide inspiration to others who may face their own adversity by exemplifying the positive accomplishment achieved in his circumstances.

73) Plaintiff understood that the only way for him to be able to share his artistic expression with the world would be to post his art and commentary on the internet; this requires funds to initiate and maintain, and he can not afford this. The only way Plaintiff can

1  afford to post and maintain his art presentations and commentary is to
2  be able to offer art for monetary donations, which could also help pay his
3  restitution and possibly enable him to be able to participate in
4  correspondence courses, which would contribute to his rehabilitation,
5  and make regular canteen purchases.

6

7  74) With this plan in mind, he asked for (PBSP) Warden Horels permission
8  per the "exception" allowing inmates to generate revenue (CCR
9  Title 15 § 3024(a) ). The Warden denied his request.

10

11  75) The California Code of Regulations Title 15 Section 3100(e) states that an
12  inmates right to own, sell, or convey personal property, including all written
13  and artistic material produced or created by that inmate shall be governed
14  by section 2601 of the Penal Code.

15

16  76) Penal Code Section 2601(a) states that a prisoner shall have the right
17  to inherit, own, sell, or convey real or personal property, including all written
18  and artistic material produced or created by the person during the period
19  of imprisonment. However, to the extent authorized in section 2600,
20  Department of Corrections may restrict or prohibit sales or conveyances
21  that are made for business purposes."

22

23  77) Penal Code Section 2600, Deprivation of Rights, states in relevant
24  part, that a person sentenced to imprisonment in a state prison may
25  during that period of confinement be deprived of such rights, and only
26  such rights, as is reasonably related to legitimate penological interests.

27

28  78) Plaintiff contends that denying him the right to sell his artwork

to his correspondents or post it on the internet for monetary donations serves no legitimate penological interests.

79) California Code of Regulations Title 15 section 3104 allows for the sale of art with the wardens permission, however, any request to sell personal art is summarily denied.

80) Plaintiff is challenging (CCR) Title 15 § 3024 (a) on the basis that it is vague, overbroad, and has effectively extinguished his right to freedom of expression by making it impossible for him to share his art and message with the world. He is not seeking to "operate a business," he is merely seeking to offer art for donations necessary to be able to share his artistic expression with the public (and possibly pay off his restitution fine, participate in correspondence courses and be able to purchase items through the prison canteen); suppressing his right to freedom of expression is without legitimate penological justification and violates the 1st Amendment to the U.S. Constitution.

81) Additionally, Plaintiff challenges (PBSP) Warden Horels practice/policy of refusing to grant any (PBSP-SHU) inmates an exception to Title 15 § 3024 (a) while Plaintiff is informed and believes, and thereon alleges, that the general population inmates are granted such exceptions, which constitutes arbitrary application of the rule without legitimate penological justification, and violates the 14th Amendments equal protection clause.

82) Plaintiff also challenges defendant Tilters promulgation, implementation and enforcement of (CCR) Title 15 § 3024 (a), which violates

Plaintiffs 1st Amendment right to Freedom of expression in that it makes it impossible for Plaintiff to share his artistic expression and message with the world.

(F) U.S. Constitutional 1st Amendment right to Freedom of expression and 14th Amendment right to equal protection violations

(PBSP-SHU) procedure of stamping prisoners artwork in red ink indicating housing unit of origin suppresses Freedom of expression and is applied arbitrarily.

83) Effective 11-13-06, a practice/policy was instituted at (PBSP-SHU) that required staff processing outgoing inmate mail from the (SHU) to stamp the mailing and all of it's contents with red ink indicating the unit of origin of the inmate. The stamp is approximately (3) and a half inches long by (1) and a half inch wide and is placed on the front of all letters, through the writing, and on the back of all artwork. The memorandum that was issued by (CDCR), Pelican Bay State Prison to all (SHU) staff stated that this process was implemented to track the point of origin of each mailing and that discretion should be utilized at all times to not deface or alter the mailing itself. A second memorandum which was issued on 12-20-06 to provide clarity to the first memorandum indicated that the focus of the policy was to stop covert communication and to prevent crime at (PBSP), other prison, and around the state. In addition, the second memorandum stated that artwork would only be stamped on the back of the page, carefully, to avoid bleed through.

84) Plaintiff is challenging this practice/policy as it pertains to his artwork on the grounds that it has altered, defaced, and ruined drawings that

1  he has mailed to his family and friends, and that it does not serve

2  the legitimate penological interest put forward to justify it, thus it

3  violates his 1st Amendment right of freedom of expression as well as

4  his 14th Amendment right of equal protection, as described in detail

5  below.

6

7  85) Plaintiff is an accomplished artist and enjoys spending his time in a

8  constructive, positive manner by drawing for his family and friends on the

9  outside, as it is one of the few things he can do to express his love and

10 maintain those bonds in his situation, which (CDCR) claims to encourage.

11 Plaintiff is housed in an institution approximately 850 miles from where

12 he grew up and where his family and friends continue to reside, which

13 makes it extremely difficult for them to visit Plaintiff. In order to do

14 so, money must be set aside and saved for gas and lodgings, and

15 time must be taken off from work to make the approximately 850

16 mile trip, which adds to the hardship and strain on himself and his

17 family and friends. For this reason, Plaintiff only receives one visit about

18 every (4) to (5) years and consequently must use the mail system to

19 try to maintain contact with his loved ones on the outside. Drawing for

20 them is one of the few things he can do to keep those relationships

21 strong and to show them that he is spending his time constructively

22 and keeping a positive attitude against all odds, which he believes

23 his art expresses and exemplifies.

24

25

26 86) When staff at (PBSP-SHU) began to stamp Plaintiffs drawings he was

27 informed by his correspondents that the stamp on the back of the page

28 was bleeding through to the other side and could clearly be seen within the drawing itself, thus defacing and ruining the artworks. This was

confirmed by the Plaintiff when he received copies of the drawings in question. The stamp, which indicates the Plaintiff's housing location within the prison, consists of the words "Pelican Bay State Prison, Security Housing Unit, Unit D-1." The practice/policy of stamping inmates artwork at (PBSP-SHU) discourages Plaintiff from wanting to express himself artistically to his family and friends as he knows that some of his drawings will inevitably be defaced and ruined. The suppression of his right to freedom of expression and the actual defacement of his artwork is without legitimate penological justification and violates the 1st Amendment to the U.S. Constitution.

87) Plaintiff challenges herein defendant Horels promulgation and enforcement of the practice/policy of stamping Plaintiff's artwork with his housing location as described hereinabove, thereby defacing his artwork and suppressing his right to freedom of expression. Suppression of his right to free expression is without legitimate penological justification and violates the 1st Amendment to the U.S. Constitution.

88) Additionally, Plaintiff is informed and believes, and thereon alleges, that the policy of stamping all outgoing mail is only being carried out in the (SHU) at Pelican Bay State Prison, and nowhere else at (PBSP) or in the California Department of Corrections and Rehabilitation, which constitutes arbitrary application of the policy without legitimate penological justification and violates the 14th Amendment's equal protection clause.

(Continued from page 4, "Relief")

90) Defendants Heggstroms, Hardings, Everts, McCasland, Buchanans and Mazycks actions described in paragraphs (1) through (28) constitute a violation of Plaintiffs 8th Amendment right to be protected from cruel and unusual punishment in the form of unnecessary and excessive use of force by their unnecessary and wanton infliction of pain, including physical injury and emotional distress as described herein.

91) Specifically, defendant McCasland forcefully and without any provocation, and while Plaintiff was fully restrained with his hands cuffed behind his back, and while his back was to the defendants, yanked Plaintiff out of the shower and forcefully slammed him against the wall, which inflicted physical pain and emotional distress

92) Defendant Heggstrom, without any provocation and in his position of authority as a correctional Sergeant, ordered defendants Harding, Buchanan, Everts, McCasland and Mazyck to use unnecessary and excessive force against Plaintiff, which inflicted physical pain and injury, and emotional distress. Defendant Heggstroms order came at a time when Plaintiff was fully restrained and vulnerable with his hands cuffed behind his back and had his back to the defendants.

93) Defendants Heggstrom, Harding, Buchanan, Everts, McCasland and Mazyck knowingly, maliciously and sadistically inflicted physical pain and injury, and emotional distress, on Plaintiff when they kicked his feet out from under him to throw him off body and body slammed him to the ground face first, without provocation and while Plaintiff was fully restrained with his hands cuffed behind his back and while he had his back to the defendants.

94) Defendant Buchanan intentionally, maliciously and sadistically in-flicted physical pain and injury, and emotional distress, when he grabbed Plaintiffs nose with the open palm of his hand and pushed in and up, and did so while Plaintiff was lying flat on the ground, on his belly, with his hands cuffed behind his back and with other staff on top of him. Plaintiff is informed and believes, and thereon alleges, that defendant Buchanan in so doing used an immobilizing pressure pressure point technique that was meant to intentionally cause great pain to Plaintiff.

95) Defendants subjected Plaintiff to this physical pain, injury and emotional distress under circumstances that did not require any use of physical force whatsoever.

96) Defendants acts as alleged herein were despicable, knowing, willful, cowardly and malicious, and/or carried out with reckless or callous disregard for Plaintiffs federally protected civil rights.

97) As a direct and proximate result of all of the defendants actions herein alleged, Plaintiff suffered physical pain, injury and emotional distress and is entitled to an award of compensatory and punitive damages for injuries suffered.

<u>Second Claim For Relief</u>

Subjecting Plaintiff to punitive, Retaliatory Acts in Response
to staff Complaint/Grievances In Violation of 1st Amendment
Right to Access the Court

98) Plaintiff realleges and incorporates by reference each allegation in paragraphs (1) through (88), inclusive, part I. "Exhaustion of Administrative Remedies" of this complaint, inclusive, and paragraphs (89) through (97), inclusive, of the First claim, as if alleged herein.

99) Defendants Heggstroms, Hardings, Buchanans, Everts, McCasland and Mazycks actions described in paragraphs (29) through (32) have chilled Plaintiffs 1st Amendment right to access the court and the broader right to petition government For redress of grievance, as described herein.

100) Specifically, defendants Heggstrom, Harding, Buchanan, Everts, McCasland and Mazyck knowingly and willfully retaliated against Plaintiff when he told them he was going to File a staff complaint regarding their unnecessary and excessive use of Force by Filing fabricated charges against him, to wit, Attempted Battery on a Peace officer.

101) Plaintiff is informed and believes, and thereon alleges, that defendants acted intentionally in the manner described hereinabove with complete disregard For Plaintiffs Federally protected rights in order to justify the unnecessary and excessive use of Force, and that they conspired to do so because Plaintiff informed them that he was going to File a staff complaint thereby making them accountable For their actions.

102) In so doing as described hereinabove, defendants have caused Plaintiff to suffer an adverse action For exercising his 1st Amendment right to access the court with the broader right to petition government

1  For redress of grievance.

2

3  103) Defendants acted despicably, knowingly, willfully, and maliciously,

4  or with reckless or callous disregard for Plaintiffs Federally protected

5  rights.

6

7  104) As a direct and proximate result of all of the defendants actions herein

8  alleged, Plaintiff has suffered, and continues to suffer, unjustified

9  administrative disciplinary action and an unjustified loss of good

10  time credit thus depriving him of a liberty interest, as well as

11  emotional distress, and is entitled to compensatory and punitive

12  damages for injuries suffered.

13

14  <u>Third Claim For Relief</u>

15  Subjecting Plaintiff to Punitive, Retaliatory Acts in Response

16  to Staff Complaint/Grievance in Violation of 1st Amendment

17  Right to Access the Court

18

19  105) Plaintiff realleges and incorporates by reference each of the

20  general allegations in paragraphs (1) through (88), inclusive, part

21  I. Exhaustion of Administrative Remedies of this complaint,

22  inclusive, paragraphs (89) through (97), inclusive, of the First

23  claim, and paragraphs (98) through (104), inclusive, of the

24  second claim, as if alleged herein.

25

26  106) Defendants Buchanans, Johnsons and Castellaws actions

27  described in paragraphs (33) through (54) have chilled Plaintiffs

28  1st Amendment right to access the court and the broader right

— 40 —

1  to petition government for redress of grievance.

2

3  107) Specifically, defendant Buchanan knowingly and maliciously

4  confiscated Plaintiffs headphones and left his cell and property

5  in complete disarray after searching it as an act of retaliation for

6  the staff complaint that Plaintiff filed against him.

7

8  108) Defendant Buchanan knowingly and maliciously threatened

9  Plaintiff with retaliation if Plaintiff exercised his federally

10  protected right to file a staff complaint without fear of reprisals

11  from staff, and then actually did so by falsely charging that Plaintiff

12  made threats of force or violence against him when at no time

13  did Plaintiff behave in the manner charged.

14

15  109) Defendants Johnson and Castellaw have intentionally, knowingly

16  and maliciously conspired with defendant Buchanan to further

17  his retaliatory acts, which has chilled Plaintiffs 1st Amendment

18  right to access the court, by their continued harrassment and

19  punishments directed at Plaintiff, to wit, the continued

20  extensions of the security restrictions, which included weekly

21  cell searches, and deprivation of his liberty interest even after

22  supporting charges for such security restrictions were dismissed,

23  charges which defendant Buchanan filed.

24

25  110) Plaintiff is informed and believes, and thereon alleges, that the (PBSP)

26  Administration has an unwritten policy of retaliating against inmates

27  who file staff complaints, and that defendants Johnson and Castellaw

28  in their positions of authority were working in concert with defendant

Buchanan to carry out his retaliatory acts against the Plaintiff.

111) In so doing as alleged hereinabove, defendants Buchanan, Johnson and Castellaw have caused Plaintiff to suffer and adverse action for exercising is 1st Amendment right to access the court with the broader right to petition government for redress of grievance

112) Defendants acted despicably, knowingly, willfully and maliciously, or with reckless or callous disregard for Plaintiffs federally protected rights.

113) As a direct and proximate result of all of the defendants actions herein alleged, Plaintiff has suffered and continues to suffer an unjustified, restrictive status depriving him of a liberty interest, and emotional distress, and is entitled to an award of compensatory and punitive damages for injuries suffered

114) Plaintiff is also entitled to injunctive relief, specifically, an order requiring that Plaintiffs security restriction be lifted.

Fourth Claim For Relief
Violation of Prisoners 14th Amendment right
to Due-Process

115) Plaintiff realleges and incorporates by reference each general allegation in paragraphs (1) through (88), inclusive, part I, "Exhaustion of Administrative Remedies" of this complaint, inclusive, paragraphs (89) through (97), inclusive, of the first claim, paragraphs (98) through (104), inclusive, of the second claim, and

paragraphs (105) through (114), inclusive, of the third claim, as
if alleged herein.

116) Defendants Johnsons and Castellaws actions described in paragraphs
(33) through (54) violated Plaintiffs 14th Amendment right to
procedural and substantive due-process by subjecting him to
punishments and security restrictions not ordinarily experienced
by similarly situated prisoners, and have continuously justified
these punishments and security restrictions by citing, verbally and
in writing, charges for which Plaintiff was found not guilty.

117) Specifically, defendants Johnson and Castellaw knowingly and
maliciously continued to extend the security restrictions placed
on Plaintiff and continued to allege that Plaintiff threatened a
Peace Officer, as well as another charge that alleged that
Plaintiff tried to "hide under the stairs" in his housing pool
"to attack an unknown person," even after Plaintiff was found
not guilty of these charges. The charges for which Plaintiff was
found not guilty were used as cause to extend the security
restrictions every (30) days, which violates his right to due
process.

118)
Defendants Johnson and Castellaw acted despicably, knowingly,
willfully and maliciously, or with reckless or callous disregard for
Plaintiffs Federally protected rights.

119) As a direct and proximate result of defendants Johnsons and
Castellaws actions herein alleged, Plaintiff has suffered and

— 43 —

continues to suffer an unjustified restrictive status which deprives him of a liberty interest, and emotional distress, and is entitled to an award of compensatory and punitive damages for injuries suffered. Plaintiff is informed and believes, and thereon alleges, that he will continue to suffer such damages in the future.

120) Plaintiff is also entitled to injunctive relief, specifically, an order requiring that Plaintiffs security restriction be lifted as well as an order prohibiting the defendants from alleging, verbally or in writing, that Plaintiff displayed conduct or violated rules or regulations for which he was found not guilty.

### Fifth Claim for Relief
### Violation of Prisoners 1st Amendment
### right to access the court

121) Plaintiff realleges and incorporates by reference each general allegation in paragraphs (1) through (88), inclusive, part I "Exhaustion of Administrative Remedies" of this complaint, inclusive, paragraphs (89) through (97), inclusive, of the first claim, paragraphs (98) through (104), inclusive, of the second claim, paragraphs (105) through (114), inclusive, of the third claim, and paragraphs (115) through (120) of the fourth claim, as if alleged herein.

122) Defendant Wilbers actions described in paragraphs (55) through (62) have effectively blocked Plaintiffs access to the court and his broader right to petition government for redress of grievance, thus he has violated his 1st and 14th Amendment right to access the

1  counts as described herein.

2

3  123) Defendant Wilber, in his official capacity as Appeals Coordinator at
4  (PBSP), refused to process Plaintiffs staff misconduct complaint and
5  did so willfully and intentionally, and with the knowledge that the
6  misconduct complained therein pertained to his intentional and
7  malicious violations of clearly established appeal procedures at (PBSP).

8

9  124) Specifically, defendant Wilber is the Appeals Coordinator at (PBSP)
10  and is solely responsible for the processing, screening and assignment
11  of 602 Appeals/Staff complaints at (PBSP). Plaintiff filed an appeal
12  regarding his security restrictions which defendant Wilber refused
13  to process. Plaintiff then filed a staff complaint regarding defendant
14  Wilber's refusal to process the appeal of the security restrictions,
15  which he refused to process in violation of Plaintiffs 1st
16  Amendment right to access the court, which extends to established
17  prison grievance procedures.

18

19  125) Plaintiff is informed and believes, and thereon alleges, that defendant
20  Wilber acted intentionally in the manner described herein and with
21  knowledge that he was violating Plaintiffs Federally protected rights,
22  and that he did so to shield himself from an investigation by Internal
23  Affairs and to block Plaintiffs stated intention in the staff complaint
24  to seek relief from Federal Court.

25

26  126) As a direct and proximate result of defendant Wilbers conduct,
27  Plaintiff has suffered and continues to suffer a loss of his 1st
28  Amendment Freedoms and emotional distress. Plaintiff is informed

1  and believes, and thereon alleges, that he will continue to suffer
2  such losses and damages in the future.

3

4  127) In acting as described hereinabove, defendant Wilber acted despicably,
5  knowingly, willfully and maliciously, or with reckless or callous disregard
6  for Plaintiffs federally protected rights, entitling Plaintiff to an
7  award of compensatory and punitive damages.

8

9  128) Plaintiff is also entitled to injunctive relief, specifically, an order
10 requiring that defendant Wilber process and assign his staff complaint
11 in accordance with clearly established appeal procedures as outlined
12 in the California Code of Regulations, Title 15.

13

14                      Sixth Claim for Relief
15          Suppression of Plaintiffs 1st Amendment Right
16                  to Freedom of Expression.

17

18 129) Plaintiff realleges and incorporates by reference each allegation
19 in paragraphs (63) through (88), inclusive, and part I, "Exhaustion
20 of Administrative Remedies" of this complaint, inclusive, as if
21 alleged herein.

22

23 130) Defendants Horels and Tiltons actions and/or regulations de-
24 scribed in paragraphs (63) through (82) have suppressed Plaintiffs
25 1st Amendment right to Freedom of expression through the promulgation
26 and enforcement of a policy which blocks Plaintiff from being able to
27 offer artwork for donations on the internet.

28

131) Defendant Horels actions and/or regulations described in paragraphs (83) through (88) have suppressed Plaintiffs 1st Amendment right to Freedom of expression through the promulgation and enforcement of a policy at (PBSP-SHN) that requires that staff rubber stamp all of Plaintiffs artwork being sent to outside correspondents through the United States Postal Service, which defaces the artwork thus suppressing Plaintiffs Freedom of expression.

132) Specifically, the California Code of Regulations (CCR) Title 15 § 3024 (a) as promulgated by defendant Tilton, bans inmates From being able to offer artwork for donations to their correspondents or on the internet, without a legitimate penological justification, thus denying Plaintiff a right guaranteed to prisoners by the U.S. Constitution.

133) (CCR) Title 15 § 3024 (a), as enforced by defendant Horel, bans inmates From being able to offer artwork for donations to their correspondents or on the internet without a legitimate penological justification thus denying Plaintiff a right guaranteed to prisoners by the U.S. Constitution. It is in defendant Horels power to grant exceptions to the regulation cited above, however, any request by the plaintiff to be granted such an exception thus allowing him to sell and/or offer his artwork for donations is summarily denied.

134) In so doing as alleged herein, defendants Horel and Tilton acted intentionally and with knowledge that they were violating plaintiffs constitutionally protected 1st Amendment right to Freedom of expression. Their promulgation and enforcement of (CCR) Title 15 § 3024 (a) as applied to Plaintiff has caused irreparable injury to Plaintiffs 1st

Amendment right to Freedom of expression as there is no valid, rational connection between the regulation and a legitimate governmental interest put forward to justify it.

135) In so doing as alleged herein, defendant Horel acted intentionally and with knowledge that his promulgation of the policy requiring that staff rubber stamp Plaintiff's artwork was in effect defacing and destroying it. His enforcement of this policy has caused irreparable harm to Plaintiff's 1st Amendment right to Freedom of expression as there is no valid, rational connection between the policy and a legitimate governmental interest put forward to justify it.

136) As a proximate result of defendants Horels and Tiltons conduct, Plaintiff has suffered and continues to suffer general damages in the form of irreparable injury to his 1st Amendment right to Freedom of expression. Plaintiff is informed and believes, and thereon alleges, that he will continue to suffer such damages in the future without the relief he seeks from the court. Plaintiff is entitled to an award of compensatory and punitive damages for injuries suffered.

137) As a further proximate result of defendants Horels and Tiltons conduct, Plaintiff is informed and believes, and thereon alleges, that he will suffer special damages due to a loss of monetary donations for the artwork that he is unable to post on the internet as a result of the enforcement of (CCR) Title 15 § 3024(a). Plaintiff is entitled to an award of compensatory and punitive damages for injuries suffered

138) Plaintiff is also entitled to injunctive relief in the form of an order enjoining the enforcement of (CCR) Title 15 § 3024 (a) against him and those similarly situated, as well as the policy of requiring staff to rubber stamp all of his artwork intended for mailing. Without the injunctive relief that he seeks, Plaintiff will continue to be subjected to irreparable injury to his federally protected 1st Amendment right to freedom of expression.

## Seventh Claim For Relief
### Violation of Prisoners 14th Amendment Right to Equal Protection

139) Plaintiff realleges and incorporates by reference each general allegation in paragraphs (63) through (88), inclusive, part I "Exhaustion of Administrative Remedies" of this complaint, inclusive, and paragraphs (129) through (138), inclusive, of the Sixth Claim, as if alleged herein.

140) Defendant Horel's actions described in paragraphs (63) through (88) constitute a violation of Plaintiffs 14th Amendment right to equal protection by subjecting him to conditions different from those experienced by prisoners incarcerated in the general population at (PBSP).

141) Specifically, defendant Horel's practice/policy of refusing to grant any (PBSP-SHU) inmates an exception to (CCR) Title 15 § 3024 (a) while plaintiff is informed and believes, and thereon alleges, that the general population inmates are granted such exceptions, constitutes arbitrary application of the rule without legitimate

-49-

penological justification, and violates the 14th Amendments equal protection clause.

142) Defendant Horels promulgation and enforcement of the practice/policy that requires staff to rubber stamp all (SHU) inmates artwork intended for mailing while plaintiff is informed and believes, and thereof alleges, that general population inmates artwork is not being subjected to or defaced with such a stamp constitutes arbitrary application of the practice/policy without legitimate penological justification and violates the 14th Amendments equal protection clause.

143) In so doing as alleged hereinabove, defendant Horel acted despicably, knowingly, willfully and maliciously, or with reckless or callous disregard for plaintiffs federally protected rights.

144) As a direct and proximate result of defendant Horels actions herein alleged, plaintiff has suffered and continues to suffer unfair and unequal treatment without legitimate penological justification in the form of an arbitrary application of a rule that deprives him of the right to offer artwork for donations on the internet, and is entitled to an award of compensatory and punitive damages for injuries suffered. Plaintiff is informed and believes, and thereon alleges, that he will continue to suffer such damages in the future.

145) As a direct and proximate result of defendant Horels actions herein alleged, plaintiff has suffered and continues to suffer unfair and unequal treatment without legitimate penological justification

in the form of an arbitrary application of a rule that requires staff to place a rubber stamp on all of his artwork intended for mailing. Plaintiff is informed and believes, and thereon alleges, that he will continue to suffer such damages in the future.

146) Plaintiff is entitled to injunctive relief in the form of an order enjoining the enforcement of (CCR) Title 15 § 3024 (a) against him and those similarly situated, as well as the policy requiring staff to rubber stamp all of his artwork intended for mailing. Without the injunctive relief that he seeks, Plaintiff will continue to be treated unfairly and unequally in violation of his 14th Amendment right to equal protection.

1  (continued From page 2 " Exhaustion of Administrative Remedies")

2

3  Claims "B" and "C" — Retaliation

4

5  On 05-13-07, Plaintiff Filed a 602 Appeal, log No. D07-01106, relative

6  to the retaliatory conduct alleged herein. The appeal was denied at the

7  First level on 05-24-07, whereupon Plaintiff appealed to the 2nd level

8  on 05-30-07. The appeal was denied at the 2nd level on 06-08-07

9  whereupon Plaintiff appealed to the 3rd level on 06-15-07. The appeal

10  was denied at the 3rd level on 09-22-07 thus exhausting

11  administrative remedies available to Plaintiff.

12

13  On 11-04-07, Plaintiff Filed another appeal relative to defendants

14  retaliatory conduct alleged herein and mailed it directly to the

15  Chief of Inmate Appeals, Inmate Appeals Branch in Sacramento, which

16  acts as the 3rd level in the administrative process, because (PBSP)

17  Appeals Coordinator Wilber refused to process or return back to

18  Plaintiff several prior appeals he tried to File at the institution

19  in accordance with appeal procedures and as a result lost the

20  supporting documents attached thereto. Plaintiff explained to the

21  Chief of Inmate Appeals the problems he was having concerning

22  the Appeals Coordinators refusal to process his appeals or return

23  them back to Plaintiff, and asked that the Chief Foward the

24  appeal regarding the retaliatory conduct directly to the Appeals

25  Coordinator with instructions to process it and assign it to a

26  reviewer, so that there would be a record of it. In the appeal

27  itself, Plaintiff asked that the punishments/restrictions be lifted

28  From plaintiff, that all defendants involved be reprimanded For

their retaliatory actions, that Plaintiff be given full due-process, and lastly that he be monetarily compensated for the defendants actions. On 12-21-07 the 602 Appeal was returned to Plaintiff with a format type letter signed by N. Grannis, Chief, Inmate Appeals Branch which stated that the appeal was being screened out because Plaintiff did not follow appeal procedures, specifically, that he did not exhausted the first and second levels before submitting it to the 3rd level.

### Claim "D" — Access to the Court and Due Process Violations

On 09-06-07, Plaintiff filed a "staff complaint" utilizing the existing departmental appeal procedures at (PBSP) relative to the Access to the Court and Due Process Violations as alleged in paragraphs (55) through (62). Plaintiff was unable to exhaust the administrative remedies available to him due to Appeals Coordinator Wilbers refusal to accept and process the complaint per appeal procedures.

### Claim "E" — Freedom of Expression and Equal Protection Violations

On 09-20-07, Plaintiff filed a 602 Appeal, log No D07-02073, relative to the First Amendment Freedom of expression and Fourteenth Amendment equal protection violations alleged in paragraphs (63) through (82) and asked that he be allowed to sell his art to receive an explanation detailing what the legitimate penological interests were that the policy was meant

to serve, and to be compensated monetarily. The appeal was
bypassed to the second level per appeal procedures, where it was
"partially granted" on 10-01-07 in that a written explaination was
given to Plaintiff as requested. All other action requested was
denied. On 11-13-07 Plaintiff appealed to the third level
where it was denied on February 19, 2008, thus exhausting
the administrative remedies available to him.

Claim "F" — Freedom of Expression
and Equal Protection Violations

On 12-10-06, Plaintiff filed a 602 Appeal, log No. D07-00164,
relative to the First Amendment Freedom of expression and
Fourteenth Amendment Equal Protection Violations alleged in
paragraphs (83) through (88) and asked that the regulation
in question be repealed. Plaintiff did not seek monetary comp-
ensation as it is not available through (CDCR) appeal
procedures. The appeal was bypassed to the First level
where it was denied on 02-14-07. Plaintiff appealed to
the second level on 02-20-07 and on 03-13-07 it was
denied. Plaintiff appealed to the third level on 03-27-07
where it was denied on 06-19-07 thus exhausting the
administrative remedies available to him

## Prayer For Relief

Wherefore, Plaintiff prays for the following relief:

1. Injunctive relief.
2. Compensatory damages in the amount according to proof at trial.
3. Punitive damages in the amount according to proof at trial
4. Costs of suit; and
5. Such relief as the Court deems proper.

## Demand For Jury Trial

Plaintiff Evans hereby demands a trial by jury.

NAME: Philip EVANS

DC NO: T03496 HOUSING: DI-124



PELICAN BAY STATE PRISON
5905 Lake Earl Dr
Crescent City CA 95532



PITNEY BOWES
$ 02.67⁰
02 1M
0004217666    APR 02 2008
MAILED FROM ZIP CODE 95531

RECEIVED

APR - 7 2008

RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

U.S. Northern Dist. of Ca.
U.S. Courthouse
450 Golden Gate Ave.
San Francisco, Ca. 94102-3483